ECF CASE
JUDGE HELLERSTEIN

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

**J & J SPORTS PRODUCTIONS, INC.**, as
Broadcast Licensee of the **May 5, 2007**
**DeLaHoya/Mayweather** Program
                      Plaintiff,

         -against-

761 BLUE LAGOON CORP. d/b/a BLUE
LAGOON a/k/a BLUE 761 LAGOON a/k/a BLUE
LAGOON
                      Defendants.
-----------------------------------------------------------------

**PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
DEFAULT JUDGMENT**
Civil Action No. 07-CV-6527-AKH-FM
HON. ALVIN K. HELLERSTEIN

      Plaintiff submits the following supplemental Memorandum of Law in support of its request for an award of damages against the Defendants, 761 BLUE LAGOON CORP. d/b/a BLUE LAGOON a/k/a BLUE 761 LAGOON a/k/a BLUE LAGOON and in direct response to the Court Order of January 3, 2008requesting disclosure of; 1) exact license fee other commercial establishments were charged to broadcast Plaintiff's signal; 2) an estimate of revenues and profits reaped by defendants as a result of the illegal broadcast; and 3) any other relevant costs incurred by plaintiffs as a result of the illegal broadcast.

**RATE CARD**

      Pursuant to Your Honor's order, please find the rate card, attached as Exhibit 'A,' outlining the fee a commercial establishment had to pay in order to lawfully obtain the De La Hoya v. Mayweather signal. The rate is dependant upon the lawful fire code occupancy. Depending upon the true capacity of Defendant's commercial establishment, the event in

question would have cost these Defendants $2,200 to $4,200, depending on the true capacity of Defendants' bar. The estimated capacity of the establishment was approximately 100 patrons in the affidavit of auditor Keith E. Rauscher. See Affidavit of Keith E. Rauscher, attached to Plaintiff's Affidavit in support of Motion for Default Judgment, Ex. C, ECF. Doc. 9. However, if the true capacity as determined by their fire code occupancy was actually more than 100, it would have cost Defendants $4,200 to legally purchase the De La Hoya v. Mayweather event.

**ACTUAL DAMAGES**

Your Honor also requested the Plaintiff to provide an estimate of revenues and profits reaped by defendants as a result of the illegal broadcast, and any other relevant costs incurred by plaintiff as a result of defendant's piracy.

It is respectfully submitted that such an analysis would require additional information from Defendants, including, but not limited to, revenues Defendant made on the night in question compared to revenues on a typical Saturday night. Because Defendant has not appeared in this action, nor has Plaintiff had the benefit of discovery in this matter because of intentional default, Plaintiff is unable to produce such information to Your Honor.

When a Plaintiff is unable to provide evidence of damages pursuant to § 605, a Plaintiff may elect to recover statutory damages, instead of actual damages. See Garden City Boxing v. Santacruz, 2005 U.S. Dist. LEXIS 25112 (EDNY MJ Azrack)(September 20, 2005)(later adopted by Garden City Boxing Club, Inc. v. Santacruz, 2005 U.S. Dist. LEXIS 29942 (E.D.N.Y., Oct. 25, 2005). As such, Plaintiff elects to recover using statutory damages as outlined in § 605(e)(3)(C)(i)(II).

Plaintiff elects for statutory damages pursuant to 605(e)(3)(C)(i)(II). Under 605(e)(3)(C)(ii) enhanced damages are available where the violation was willful and was

committed for direct or indirect commercial advantage or private financial gain. As the Defendants exhibited the event in a commercial establishment, Plaintiff has pleaded the elements to establish a willful violation. Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

Congress, in its legislative wisdom, has decreed that substantial monetary damages be available as a deterrent to future unlawful behavior. Each decision to violate the law is a financial one. A Defendant who believes he can violate the law with impunity and never pay for his misdeeds, will continue to do so. Rampant piracy of events like the one in question will continue until Defendants realize it is just too expensive to keep stealing. As long as Defendants can attract patrons by exhibiting these events, and the cost of doing so is low, they will continue to be pirates. Although Plaintiff has not submitted evidence of the exhibition of other events in this establishment, for most defendants, once the technology or plan is in place to pirate these events, they do so again and again. The Defendants' willful refusal to respond to the lawsuit hampers the Plaintiff in demonstrating how the event was stolen and how many additional events have been stolen in a similar manner. Defendants should not benefit from their refusal to participate in this lawsuit.

Additionally, it is submitted that the damage that Plaintiff has suffered from such piracy is not directly related to the revenue reaped by Defendants on the night in question. The piracy has more of an affect on Plaintiff's sales efforts and customer retention. As stated in Plaintiff's affidavit, Plaintiff has suffered an erosion of sales due to signal piracy. Plaintiff sells its events to commercial establishments at a significant price, up to $10,200.00 for an establishment that seats over 400 patrons for the event in question.

Because of the price a commercial establishment pays to lawfully exhibit an event of this

nature, most legal establishments will charge a cover charge to its patrons viewing the event. When a Pirate shows an event without purchasing it lawfully, they do not have any financial investment and therefore do not charge any door cover to their patrons. This is in direct contrast to the lawful patron who invests between $2,000 and $10,000, depending on their capacity, and is forced to charge a cover at the door in order to recover its investment. Since signal pirates do not pay plaintiff for the event, they often do not charge a cover charge to view pay-per-view events, as with the Defendant in this action. The viewing public will obviously choose to view the boxing program at the place which is not charging a door cover. It is respectfully submitted that when a patron has a choice to pay a $20 cover charge to see a pay-per-view boxing event, or, to view the same event at a signal pirate's commercial establishment for free, simple economics will determine that the patron will go to the free establishment.

When patrons go to the signal pirates establishment to view Plaintiff's pay-per-view events, the legal establishments that have invested in the event lose customers. As such, legal establishments lose revenue and legal establishments do not realize its investment. Eventually, it becomes financially imprudent to purchase the event from Plaintiff. Such piracy negatively affects revenue Plaintiff receives, and the value of the events that Plaintiff sells. Because of such piracy, Plaintiff is compelled to pursue these pirates and deter such activity in order to maintain credibility with its lawful customers. Your Honor has the opportunity to deter pirates from stealing from Plaintiff and cutting into Plaintiff's revenue.

The Court in <u>Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.</u>, 219 F. Supp. 2d 769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tx. 2002), noted that deterrence is one of the goals of 47 U.S.C. §605 and that to require the offending establishment to pay the price it would have paid had it legally contracted to exhibit the event "would do nothing to accomplish this objective

of the statute." Id. at 776.

**CONCLUSION**

In conclusion, because it is impossible for Plaintiff to provide Your Honor with evidence of Defendant's revenues of the night in question, Plaintiff is not seeking actual damages that Plaintiff suffered as a result of Defendant pirating its signal and event, Plaintiff has elected to recover through statutory damages as outlined in § 605(e)(3)(C)(i)(II). Plaintiff respectfully requests an award in the Courts discretion which is sufficient to deter the Defendant, and possible future Defendants, from any future piracy.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the Defendants as follows:

**Against, 761 BLUE LAGOON CORP. d/b/a BLUE LAGOON a/k/a BLUE 761 LAGOON a/k/a BLUE LAGOON,**

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of up to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of ONE THOUSAND THREE HUNDRED ELEVEN DOLLARS AND FIFTY CENTS ($1311.50)

Dated: January 8, 2008
Ellenville, NY 12428

/s/ Julie Cohen Lonstein
Julie Cohen Lonstein, Esq.
Bar Roll No. JL8512
Lonstein Law Office, P.C.
Attorneys for Plaintiff
1 Terrace Hill; PO Box 351
Ellenville, NY 12428
Telephone: 845-647-8500
Fax: 845-647-6277

Exhibit A

www.boxingseries.com

# J&J SPORTS PRODUCTIONS INC.

Closed Circuit Rate Card

## Saturday, May 5, 2007 6:00 PM PT

From MGM GRAND GARDEN ARENA Live on Pay-Per-View

**MAIN EVENT -12 ROUNDS-**

-- WBC Light Middleweight Title --

### Oscar DE LA HOYA

Los Angeles, CA Light Middleweight 38-4 | 30 KOs

vs.

### Floyd MAYWEATHER

Las Vegas, NV Light Middleweight 37-0 | 24 Kos

***Fights are subject too change***

A NON-REFUNDABLE MINIMUM GUARANTEE OF $2200.00 Plus $20.00 Per Person Above 100.

| MINIMUM SEATING | RATE |
|---|---|
| 0 – 100 | 2200.00 |
| 101 – 200 | 4200.00 |
| 201 – 300 | 6200.00 |
| 301 – 400 | 8200.00 |
| 401 – 500 | 10200.00 |

Casinos minimum guarantee of $7700.00 Plus $30.00 Per Person Above 250.
Minimum room capacity 250 People per casino.

- Directv Activation is included
- Commercial Public Viewing and Business Viewing pricing for this event is based on Fire Code Occupancy.

Closed Circuit Information

All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, J&J Sports Productions Inc.. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

For further information regarding multiple locations packages contact

Art Gallegos
National Sales Manager
1-888-258-7116

2380 South Bascom Avenue, Suite 100 • Campbell, CA 95008 • Tel: (408) 369-8022 • Fax: (408) 369-8096